IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
EASTERN DIVISION

CHRISTOPHER HOWARD                                                              PETITIONER
REG. #24702-001

V.                              NO.  2:05CV00069 JWC

LINDA SANDERS, Warden,                                                          RESPONDENT
FCI, Forrest City, AR

MEMORANDUM OPINION AND ORDER

Christopher Howard, an inmate in the Federal Correctional Institution in Forrest City, Arkansas (FCI-FC), brings this 28 U.S.C. § 2241 petition for writ of habeas corpus challenging the policy of the Bureau of Prisons (BOP) regarding when a federal prisoner is eligible for transfer to a community corrections center (CCC) (docket entry #1). Respondent has filed a response (docket entry #3), and Petitioner has replied (docket entry #5).  For the reasons that follow, the petition will be GRANTED.

I.
Background

According to Petitioner, he is currently serving a sixteen-month sentence of imprisonment as a result of his conviction for possessing child pornography.  He says he has been informed by the BOP that, based on its interpretation of the applicable statutes, he is eligible to spend only the last ten percent of his sentence in a CCC,[1] which will amount to thirty to sixty days. Petitioner argues that the BOP's interpretation is erroneous

---

[1]CCCs are BOP contract facilities, commonly referred to as halfway houses, and they "provide suitable residence, structured programs, job placement, and counseling, while the inmates' activities are closely monitored."   BOP   Program   Statement   7310.04   ¶   7(a)   (Dec. 16,   1998)   (accessible   at www.bop.gov/policy/progstat/ 7310_004.pdf).

and that its application to him violates the *Ex Post Facto* Clause of the United States Constitution. He contends that he is entitled to be considered for six months of CCC placement, and asks the Court to order his transfer. Although he states a scheduled release date of September 2005, the BOP website shows that he is still incarcerated, with a projected release date of October 26, 2006. See www.bop.gov (inmate locator). He has not informed the Court of a release or other change of address, and no mail has been returned as undeliverable. The Court will, therefore, assume that he remains incarcerated at FCI-FC.

## II.
## Analysis

A.  Statutory Framework.

Pursuant to 18 U.S.C. § 3621(b), the BOP is authorized to "designate the place of [a federal] prisoner's imprisonment," which may be "any available penal or correctional facility that meets minimum standards of health and habitability established by the [BOP]...[and] that the [BOP] determines to be appropriate and suitable." The statute further provides that the BOP "may at any time ... direct the transfer of a prisoner from one penal or correctional facility to another." The statute lists the following factors for the BOP to consider in making an initial housing designation or transfer determination: (1) the resources of the facility, (2) the nature and circumstances of the prisoner's offense, (3) the prisoner's history and characteristics, (4) any relevant statements or recommendations by the sentencing court, and (5) any pertinent policy statements issued by the Sentencing Commission. There is no contention here that a CCC does not constitute a "place of ...

imprisonment" or a "penal or correctional facility." See Elwood v. Jeter, 386 F.3d 842, 846 & n.2 (8th Cir. 2004) (stating that government had conceded that a CCC is a place of imprisonment and a penal or correctional facility).

The relevant provisions of 18 U.S.C. § 3624(c) state:

**Pre-release custody.** – The [BOP] shall, to the extent practicable, assure that a prisoner serving a term of imprisonment spends a reasonable part, not to exceed six months, of the last 10 per centum of the term to be served under conditions that will afford the prisoner a reasonable opportunity to adjust to and prepare for the prisoner's re-entry into the community. The authority provided by this subsection may be used to place a prisoner in home confinement.

B.   BOP's December 2002 Policy.

For a number of years, the BOP construed its authority under § 3621(b) and § 3624(c) as authorizing the regular transfer of inmates from prison to community confinement for the last six months of their sentences, even if the six-month period exceeded ten percent of their sentences. See BOP Program Statement 7310.04 ¶ 5.[2]

On December 13, 2002, the Office of Legal Counsel for the United States Department of Justice (OLC) issued a memorandum opinion finding that this practice was unlawful. OLC Memo. Op. for Dep. Atty. Gen., Bureau of Prisons Practice of Placing in Community Confinement Certain Offenders Who Have Received Sentences of Imprisonment, 2002 WL 31940146 (Dec. 13, 2002). The opinion stated that, when a prisoner has received a sentence of imprisonment, the BOP's authority to transfer him to

---

[2]This program statement stated:

> A CCC meets the definition of a "penal or correctional facility." Therefore, the Bureau is not restricted by § 3624(c) in designating a CCC for an inmate and may place an inmate in a CCC for more than the "last ten percentum of the term," or more than six months, if appropriate.

3

a non-prison site is limited to a period "not to exceed six months, of the last 10 percentum of the term to be served," pursuant to § 3624(c)'s language. The United States Attorney General adopted the OLC's position[3] and, in response, the BOP altered its policies regarding pre-release community confinement designation, limiting the duration to the lesser of six months or ten percent of a prisoner's sentence. See BOP Memo. for Chief Executive Officers (Dec. 20, 2002)[4] (hereinafter referred to as the "December 2002 Policy").

The BOP's December 2002 Policy generated a multitude of prisoner petitions and, consequently, a number of conflicting District Court decisions on its validity. The issue was settled in the Eighth Circuit by the ruling in Elwood v. Jeter, 386 F.3d 842 (8th Cir. 2004), which reversed a decision arising out of this District and concluded that the December 2002 Policy was based on an erroneous interpretation of § 3621(b) and § 3624(c). In Elwood, the Eighth Circuit held that the correct interpretation of the statutes was as follows. First, § 3621(b) gives the BOP discretion to transfer prisoners to CCCs at any time during their incarceration. Second, § 3624(c) bestows an affirmative duty on the BOP to ensure that each prisoner spends a reasonable part of the last ten percent of his sentence under pre-release conditions that will facilitate a smooth re-entry into the community. Third, the BOP's duty under § 3624(c) is qualified in that placement under pre-release conditions is mandated only "to the extent practicable," and the duty "shall not extend beyond the last six months of the prisoner's sentence." Id. at 846-47.

---

[3]This was embodied in a memorandum dated December 16, 2002, from Larry D. Thompson, Deputy Attorney General, to Kathleen Hawk Sawyer, who was then BOP Director. The memorandum can be accessed at www.usdoj.gov/dag/readingroom/imprisonment.htm.

[4]This can be accessed at www.bop.gov/policy/ogcpg/ogcguidance_memo_red.pdf.

The Eighth Circuit further stated:

> We emphasize ... that 18 U.S.C. § 3624(c) does not require placement in a CCC. It only obligates the BOP to facilitate the prisoner's transition from the prison system. Under § 3621(b), the BOP may place a prisoner in a CCC for six months, or more. Under § 3624(c) the BOP must formulate a plan of pre-release conditions. This plan may include CCC placement, home confinement, drug or alcohol treatment, or any other plan that meets the obligation of a plan that addresses the prisoner's re-entry into the community. Likewise, the obligation is qualified by the phrase "to the extent practicable." Security concerns or space limitations in a CCC near the prisoner's home are among the factors that may make it impractical to transfer a prisoner to a CCC for all or even part of the transition period.

Id. at 847.

Upon remand, the District Court entered an order directing that:

> Pursuant to the Eighth Circuit's opinion ..., Respondent shall: (a) consider, in good faith, transferring Petitioner to a CCC for the last six months of his sentence in accordance with the factors taken into account by the BOP prior to its adoption of the December 2002 policy; and (b) place Petitioner in conditions that will afford him a reasonable opportunity to adjust to and prepare for his reentry into the community during a reasonable part of the last ten percent of his term, to the extent practicable.[fn.3: This duty shall not extend beyond the last six months of Petitioner's sentence.]

Elwood v. Jeter, No. 2:03cv00202, docket entry #39 at 3-4 (E.D. Ark. Jan. 3, 2005). The petitioner appealed from this order, and the Eighth Circuit summarily affirmed the decision of the District Court. Elwood v. Jeter, No. 05-1338 (8th Cir. Feb. 9. 2005) (docket entry #42 in E.D. Ark. No. 2:03cv00202).

    C.    <u>BOP's February 2005 Rule</u>.

In response to rulings by various district courts invalidating the December 2002 Policy, the BOP proposed a new rule under the Administrative Procedure Act's notice-and-comment procedure that purported to remedy the infirmities found by those courts.

Community Confinement, Proposed Rule, 69 Fed. Reg. 51213 (Aug. 18, 2004). Because several courts held that the BOP had discretion under § 3621(b) to place prisoners in CCCs prior to the last ten percent of the sentence being served, the BOP proposed to "exercise its discretion categorically to limit inmates' community confinement to the last ten percent of the prison sentence being served, not to exceed six months." Id. The BOP explained that "[t]his categorical exercise of discretion is permissible based on the Supreme Court's recognition that, even when a statutory scheme requires individualized determinations, the decisionmaker has authority to rely on rulemaking to resolve certain issues of general applicability (unless Congress clearly expresses an intent to withhold that authority." Id. (citing Lopez v. Davis, 531 U.S. 230, 243-44 (2001)). The proposed rule became effective February 14, 2005. Community Confinement, Final Rule, 70 Fed. Reg. 1659 (Jan. 10, 2005). As codified, the rule provides as follows:

> § 570.20.  What is the purpose of this subpart?
>
> (a) This subpart provides the Bureau of Prisons' (Bureau) categorical exercise of discretion for designating inmates to community confinement. The Bureau designates inmates to community confinement only as part of pre-release custody and programming which will afford the prisoner a reasonable opportunity to adjust to and prepare for re-entry into the community.
>
> (b) As discussed in this subpart, the term "community confinement" includes Community Corrections Centers (CCC) (also known as "halfway houses") and home confinement.
>
> § 570.21.  When will the Bureau designate inmates to community confinement?
>
> (a) The Bureau will designate inmates to community confinement only as part of pre-release custody and programming, during the last ten percent of the prison sentence being served, not to exceed six months.
>
> (b) We may exceed these time-frames only when specific Bureau programs allow greater periods of community confinement, as provided by separate

      statutory authority (for example, residential substance abuse treatment program (18 U.S.C. 3621(e)(2)(A)), or shock incarceration program (18 U.S.C. 4046(c)).

28 C.F.R. §§ 570.20-570.21 (2005) (hereinafter the "February 2005 Rule").

      Like the December 2002 Policy that the Eighth Circuit held to be invalid in Elwood, the February 2005 Rule limits placement in a CCC to the last ten percent of the prison sentence being served, not to exceed six months, the only exception being when a specific BOP program allows a greater period of community confinement pursuant to separate statutory authority.  Also, like the December 2002 Policy, the BOP's adoption of the February 2005 Rule has spawned numerous lawsuits.  Several courts, including all of the judges in this District to have considered the issue, have held that the rule is invalid, concluding that the legislative history of § 3621(b) *requires* the BOP to consider the factors set forth in the statute before arriving at a determination regarding the appropriate facility for a given inmate, and that the rule fails to consider these factors with respect to individual placement of inmates in a CCC.  Clayton v. Sanders, No. 2:05cv00181-SWW (E.D. Ark. Sept. 27, 2005); Banks v. Sanders, No. 2:05cv00161-JLH (E.D. Ark. Sept. 23, 2005); Rabbitt v. Sanders, No. 2:05cv00125-WRW (E.D. Ark. Sept. 23, 2005); Fults v. Sanders, No. 2:05cv00091-GH (E.D. Ark. July 26, 2005); Wiles v. Sanders, No. 2:05cv00220-JFF (E.D. Ark. Oct. 4, 2005); Oatsvall v. Sanders, No. 2:05cv00078-JTR (E.D. Ark. Sept. 16, 2005); Gibson v. Sanders, No. 2:05cv00144-HDY (E.D. Ark. Aug. 25, 2005); Jones v. Sanders, No. 2:05cv00047-HLJ (E.D. Ark. June 7, 2005). Accord Baker v. Willingham, No. 3:04cv1923 (PCD), 2005 WL 2276040, *4 (D. Conn. Sept. 19, 2005) (granting writ and finding that "[i]n effect ... the February 2005 Rule is identical to the December 2002 Policy, as the BOP continues to refuse to consider inmates for CCC placement prior to their ten

percent date"); Pimentel v. Gonzales, 367 F. Supp. 2d 365, 373-76 (E.D.N.Y. 2005); contra Moss v. Apker, 376 F. Supp. 2d 416, 424-25 (S.D.N.Y. 2005) (concluding that February 2005 Rule represents "a reasonable interpretation of § 3621(b)" and "a lawful exercise of the BOP's discretion under § 3621(b)"); Yip v. Fed. Bureau of Prisons, 363 F. Supp. 2d 548, 551-52 (E.D.N.Y. 2005) (finding that BOP is "authorized to create categorical rules even where a statute requires individualized determinations").

The rationale adopted by the judges in this District in concluding that the BOP's interpretation is erroneous was set forth in Fults v. Sanders, supra, as follows:

> This court does not doubt the BOP, in implementing the statutes governing placement of inmates, can "rely on rulemaking to resolve certain issues of general applicability unless Congress clearly expresses an intent to withhold that authority." Lopez v. Davis, 531 U.S. 230, 244 (2001). In Lopez, the Court upheld a BOP regulation excluding offenders who had possessed a firearm during their offense from participating in the early release program established under 18 U.S.C. § 3621(e)(2)(B). "The Bureau is not required continually to revisit 'issues that may be established fairly and efficiently in a single rulemaking proceed[ing].... The Bureau reasonably concluded that an inmate's prior involvement with firearms, in connection with the commission of a felony, suggests his readiness to resort to life-endangering violence and therefore appropriately determines the early-release decision[.]'" Id.
>
> As a District Court in the Eastern District of New York has observed, however,
>
>> [h]ere, rather than merely delineate the boundaries of its discretion consistent with congressional intent as in Lopez, the February 2005 Rule removes all discretion in all cases in determining whether to transfer an inmate to a CCC at any time prior to the last ten percent of the inmate's sentence. While BOP has the authority to clarify the contours of its discretionary authority as it relates to certain classes of issues, this court is unconvinced that BOP may categorically remove its entire ability to exercise its discretion, where, as here, the enabling statute provides specific factors relevant to whether CCC placement may be appropriate prior to the last ten percent of a prisoner's sentence.
>> ...

> Although Section 3621(b) sets forth several factors intended to inform BOP's decision-making with regard to CCC placement prior to the last ten percent of an inmate's sentence, unlike the rule promulgated in Lopez, the February 2005 Rule in no way furthers or interprets these factors.
>
> Pimentel v. Gonzalez, [367 F. Supp. 2d at 374-75]. The court [in Pimentel] further found the legislative history for § 3621(b) "calls on the agency to consider" the factors set forth in the statute and concluded that the "February 2005 Rule fails because it in no way relates to or considers these factors with regard to transfer to a CCC." This court agrees. While the BOP labeled the rule a "categorical exercise of discretion" it did not exercise its discretion at all. It merely re-packaged the December 2002 blanket rule that was rejected in Elwood.

Fults, supra, docket entry #6 at 6-8 (footnote omitted).[5]

The rationale employed in Fults and the other decisions from this District is the same rationale used by the other cited decisions outside this District as a basis for invalidating the February 2005 Rule. This Court finds that the Fults decision is well-reasoned and, therefore, follows the lead of the other judges in this District in adopting its rationale and result. Accordingly, the Court finds that the BOP's February 2005 Rule is invalid. As stated in Fults, the legislative history of § 3621(b) requires that the BOP consider the factors set forth in the statute before determining the appropriate facility for a given inmate, but the February 2005 Rule fails to consider these factors with respect to placement of inmates in a CCC. The Court, therefore, grants Petitioner's 28 U.S.C. § 2241 petition for writ of habeas corpus and directs Respondent to (a) consider, within twenty days and in good faith, transferring Petitioner to a CCC for the last six months of his sentence, or the remainder of his sentence if less than six months remain to be served, in

---

[5] The BOP has appealed this decision to the Eighth Circuit Court of Appeals, and the case has recently been set for oral argument in December. Fults v. Sanders, No. 05-3490 (8th Cir. Sept. 26, 2005).

accordance with the factors taken into account by the BOP prior to its adoption of the December 2002 Policy; and (b) place Petitioner in conditions that will afford him a reasonable opportunity to adjust to and prepare for his reentry into the community during a reasonable part of the last ten percent of his term, to the extent practicable, not to exceed six months.

Because the Court has determined that Petitioner is entitled to relief as set forth above, it is not necessary to address his alternative *ex post facto* claim.

### III.
### Conclusion

THEREFORE, the Court[6] GRANTS Petitioner's 28 U.S.C. § 2241 petition for writ of habeas corpus and directs Respondent to: (a) consider, within twenty days and in good faith, transferring Petitioner to a CCC for the last six months of his sentence, or for the remainder of his sentence if less than six months remain to be served, in accordance with the factors taken into account by the BOP prior to its adoption of the December 2002 Policy; and (b) place Petitioner in conditions that will afford him a reasonable opportunity to adjust to and prepare for his reentry into the community during a reasonable part of the last ten percent of his term, to the extent practicable, not to exceed six months.

IT IS SO ORDERED this 13th day of October, 2005.

_____
UNITED STATES MAGISTRATE JUDGE

---

[6]The parties have consented to the jurisdiction of the undersigned Magistrate Judge (docket entry #4).